UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on November 1, 2013

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. |
| | : | |
| | : | Grand Jury Original |
| v. | : | |
| | : | Charges: |
| | : | |
| | : | 18 U.S.C. § 1344 (Bank Fraud) |
| GARTH ANTHONY GARDNER, | : | |
| also known as | : | 18 U.S.C. § 1014 (False Statements on |
| G.A. GARDNER, | : | Loan Application) |
| | : | |
| Defendant. | : | 18 U.S.C. § 1957 (Monetary Transactions |
| | : | in Property Derived from Specified |
| | : | Unlawful Activity) |
| Case: 1:14-cr-00179 | : | |
| Assigned To : Cooper, Christopher R. | : | Criminal Forfeiture: |
| Assign. Date : 8/14/2014 | : | |
| Description: INDICTMENT (B) | : | 18 U.S.C. §§ 982(a)(1), and (a)(2)(A), |
| | : | 21 U.S.C. § 853(p) |
| | : | |

INDICTMENT

The Grand Jury charges:

<u>COUNTS ONE THROUGH ELEVEN</u>
(Bank Fraud)

At all times relevant to this Indictment:

<u>Relevant Persons and Entities</u>

1.  Defendant GARTH GARDNER, also known as G.A. GARDNER (hereinafter "GARDNER"), was the owner of residential properties in the District of Columbia and

1

elsewhere. GARDNER was the principal owner of GGC, Inc., and GGC Publishing, both of which purportedly published books by GARDNER and others.

2. Bank of America, N.A., Wachovia Bank, N.A. (now known as Wells Fargo Bank, N.A.), Washington Mutual Bank, F.A. (now known as JP Morgan Chase Bank, N.A.), E*Trade Bank, Provident Bank of Maryland (now known as M&T Bank and Manufacturers and Traders Trust Company), SunTrust Bank, Wells Fargo Bank, N.A., Citibank, F.S.B., Riggs Bank, N.A. (now known as PNC Bank, N.A.), PNC Bank, N.A., ING Bank, F.S.B. (now known as Capital One Bank, N.A.), Fleet National Bank (now known as Bank of America, N.A.), Chevy Chase Bank, F.S.B. (now known as Capital One Bank, N.A.), Countrywide Bank, N.A. (now known as Bank of America, N.A.), National City Bank (now known as PNC Bank, N.A.), JP Morgan Chase Bank, N.A., Charles Schwab Bank, N.A., Flagstar Bank, F.S.B., and IndyMac Bank, F.S.B. (now known as OneWest Bank, F.S.B.) were financial institutions with deposits insured by the Federal Deposit Insurance Corporation. First Horizon Home Loan Corporation was a wholly-owned subsidiary of First Tennessee Bank, N.A., a financial institution with deposits insured by the Federal Deposit Insurance Corporation. Cendant Mortgage (now known as PHH Mortgage) was a mortgage company.

3. These entities, collectively referred to as the "Lenders," were in the business, among other things, of loaning money to individuals who used their houses to secure the loans. These loans were:

   a. to purchase a home where the Lender would loan a lump sum to pay the seller;

   b. to refinance a loan where the Lender would provide funds to pay off the original loan and could pay out additional funds; or

   c. to obtain a line of credit (known as a "home equity line of credit" or "HELOC") where an individual could pay off an original loan and/or take

periodic cash advances up to a specified maximum amount of money (with additional funds available to be drawn against the line of credit if the individual paid back some of the borrowed money).

4. Goldline International, Inc., GoldSilver, Inc. (also known as GoldSilver.com), and California Numismatic Investments (also known as GoldDealer.com) were precious metal retailers that bought and sold precious metals, including gold and silver, and other collectible items.

5. Lenders required an individual who wished to obtain a loan and HELOC to complete a loan application, which would list the individual's assets and liabilities, including real estate property owned and loans associated with each property. Lenders relied upon the individual to be truthful in these loan applications. Lenders would not loan money in excess of the available equity in the property securing the loan, because if the individual failed to repay the loan, the Lenders would foreclose on the loan, take possession of the property, and resell the property in an attempt to recover as much of the outstanding loan amount as possible.

6. Loans were processed and settled by title and escrow companies. It was the job of the title and escrow company to research the public land records filed on the property for liens to determine, among other things, whether the property was pledged as collateral for any other loan. The title and escrow company would also be responsible for holding the Lender's money in escrow, paying out the money according to the Lender's directions, and acting as the fiduciary of the Lender.

7. If a loan was approved, the Lender would instruct the title and escrow company to prepare for a "settlement," that is, a meeting where the individual would sign a final version of the loan application, as well as the Deed of Trust (providing public notice of the debt and granting authority to sell the property if the individual failed to pay the loan), Settlement

Statement (an accounting of the disbursement of loan money), and other documents. The Lender would provide the title and escrow company with instructions on how to secure the Lender's interest in the property and to pay off debts, if any, owed by the individual.

8. If an individual used his/her home as collateral to secure a loan, then as a condition to loaning money, the Lender would typically require that all previous loans on the property be paid off and closed by the title and escrow company and that the notice of the paid debt be removed from the appropriate land records (such as the Recorder of Deeds in the District of Columbia) so that there would be no other liens that could take precedence over the Lender's lien. The Lender also would require that a Deed of Trust be signed and filed in the land records for the Lender's lien, so that no other liens could take precedence over the Lender's lien.

9. After settlement, the title company would submit the Deed and Deed of Trust or other security instruments for filing with the District of Columbia's Recorder of Deeds (if the property were in the District of Columbia), with instructions that the Recorder of Deeds officially record the documents in the public records and then return to the title company the stamped recorded documents as proof that the documents were filed as required by the Lender.

10. On or about October 31, 2003, in the District of Columbia, defendant GARDNER purchased a residence at 5107 13th Street, N.W., Washington, D.C. (the "13th Street Property").

11. On or about May 13, 2005, in the District of Columbia, defendant GARDNER purchased a residence at 1306 Dexter Terrace, S.E., Washington, D.C. (the "Dexter Terrace Property"), through his company, GGC, Inc. On or about September 26, 2005, GGC, Inc. transferred the Dexter Terrace Property to defendant GARDNER.

## The Scheme to Defraud

12.     From in or about August 2004, until in or about December 2009, in the District of Columbia and elsewhere, the defendant, GARTH GARDNER, also known as G.A. GARDNER, devised and intended to devise a scheme to defraud financial institutions, that is, the Lenders, and to obtain money owned by and under the custody and control of said Lenders by means of false and fraudulent pretenses, representations, and promises.

## Purpose of the Scheme to Defraud

13.     It was the purpose of the scheme to defraud that defendant GARDNER would use the 13th Street Property and Dexter Terrace Property to fraudulently obtain money for his own personal use and benefit.

## Manner and Means

14.     It was part of the scheme to defraud that, on or about October 31, 2003, defendant GARDNER purchased the 13th Street Property for $335,500, which purchase defendant GARDNER financed through two mortgage loans obtained from WMC Mortgage Corporation, a $268,400 primary mortgage loan and a $67,100 second trust mortgage loan.

15.     It was a further part of the scheme to defraud that, on or about May 28, 2004, defendant GARDNER sent a facsimile to Chase Manhattan Mortgage Corporation with a copy of his purported Social Security Administration card bearing social security number xxx-xx-1354, which was not defendant GARDNER's social security number, as well as a copy of his District of Columbia driver's license, and a letter stating his interest in applying for a loan to refinance the mortgage on the 13th Street Property.

16. It was a further part of the scheme to defraud that, on or about June 18, 2004, defendant GARDNER refinanced both mortgages on the 13th Street Property through a $363,700 mortgage loan obtained from Chase Manhattan Mortgage Corporation.

17. It was a further part of the scheme to defraud that, between on or about August 1, 2004, and on or about September 30, 2004, defendant GARDNER applied for twelve HELOC loans using the 13th Street Property as collateral (hereinafter, the "2004 HELOC loans"). Defendant GARDNER settled on the 2004 HELOC loans between on or about August 25, 2004, and on or about October 26, 2004. The following chart summarizes the 2004 HELOC loans:

| LENDER | LOAN AMOUNT | SETTLEMENT DATE (ON OR ABOUT) |
|---|---|---|
| Bank of America | $131,600 | 8/25/2004 |
| Wachovia Bank | $95,100 | 9/3/2004 |
| Washington Mutual Bank | $80,400 | 9/13/2004 |
| E-Trade Bank | $100,000 | 9/16/2004 |
| Provident Bank | $104,000 | 9/18/2004 |
| SunTrust Bank | $90,000 | 9/23/2004 |
| Wells Fargo Bank | $170,000 | 9/23/2004 |
| Citibank | $173,000 | 9/27/2004 |
| Riggs Bank | $173,000 | 9/28/2004 |
| Cendant Mortgage | $150,000 | 10/6/2004 |
| ING Bank | $57,700 | 10/14/2004 |
| Fleet Bank | $100,000 | 10/26/2004 |
| **TOTAL** | $1,424,800 | |

18. It was a further part of the scheme to defraud that, in applying for and settling the 2004 HELOC loans, defendant GARDNER concealed and failed to disclose to the Lenders that he had concurrently applied for and settled the other HELOC loans, each of which also would be secured by a second deed of trust on the 13th Street Property. As a result of the scheme, and as intended by defendant GARDNER, all of the 2004 HELOC loans were approved and funded.

19. It was a further part of the scheme to defraud that, on or about May 13, 2005, defendant GARDNER used his company, GGC, Inc., to purchase the Dexter Terrace Property for $157,500 in cash. At the time of settlement, defendant GARDNER presented two cashier's checks to pay for the property purchase and the settlement costs, including a $149,000 cashier's check from Riggs Bank, N.A. (now known as PNC Bank, N.A.) and an $11,679.61 cashier's check from Bank of America. The $149,000 cashier's check from Riggs Bank, N.A. (now known as PNC Bank, N.A.) coincided with a $149,008 draw that defendant GARDNER took from the 2004 HELOC loan through Riggs Bank, N.A. (now known as PNC Bank, N.A.) on May 13, 2005. On or about September 26, 2005, defendant GARDNER transferred ownership of the Dexter Terrace Property from GGC, Inc. to defendant GARDNER.

20. It was a further part of the scheme to defraud that, between on or about March 1, 2006, and on or about April 30, 2006, defendant GARDNER applied for thirteen HELOC loans using the Dexter Terrace Property as collateral (hereinafter, the "2006 HELOC loans"). Defendant GARDNER settled on twelve of the 2006 HELOC loans between on or about May 10, 2006, and on or about June 7, 2006. Defendant GARDNER's application for a HELOC loan through IndyMac Bank, F.S.B. (now known as OneWest Bank, F.S.B.) was declined. The following chart summarizes the 2006 HELOC loans:

| LENDER | LOAN AMOUNT | SETTLEMENT DATE (ON OR ABOUT) |
|---|---|---|
| PNC Bank | $195,000 | 5/10/2006 |
| Wachovia Bank | $148,500 | 5/12/2006 |
| Chevy Chase Bank | $150,000 | 5/12/2006 |
| Citibank | $136,000 | 5/12/2006 |
| Countrywide Bank | $180,000 | 5/12/2006 |
| First Horizon Home Loan Corporation/First Tennessee Bank | $125,000 | 5/12/2006 |
| National City Bank | $168,240 | 5/12/2006 |

| Washington Mutual Bank | $192,000 | 5/15/2006 |
|---|---|---|
| SunTrust Bank | $160,000 | 5/15/2006 |
| JP Morgan Chase Bank | $150,000 | 5/15/2006 |
| Charles Schwab Bank | $100,000 | 5/15/2006 |
| Flagstar Bank | $166,400 | 6/7/2006 |
| IndyMac Bank | $200,000 | Loan Declined |
| **TOTAL** | $2,071,140 | |

21.   It was a further part of the scheme to defraud that, in applying for and settling the 2006 HELOC loans, defendant GARDNER concealed and failed to disclose to the Lenders that he had concurrently applied for and settled the other HELOC loans, each of which also would be secured by a second deed of trust on the Dexter Terrace Property. As a result of the scheme, and as intended by defendant GARDNER, all of the 2006 HELOC loans, with the exception of the IndyMac Bank loan, were approved and funded.

22.   It was a further part of the scheme to defraud that, on or about March 27, 2007, defendant GARDNER settled on a loan modification relating to the 2006 HELOC loan he previously obtained through Citibank, increasing the line of credit from $136,000 to $189,200.

23.   It was a further part of the scheme to defraud that defendant GARDNER submitted the applications for the 2004 HELOC loans and the 2006 HELOC loans within the same relative and respective time periods, in order to cause the settlement dates to occur within close proximity to one another, and by extension, to minimize the opportunity for the Lenders to learn through a title inquiry about the other loans for which defendant GARDNER had applied.

24.   It was a further part of the scheme to defraud that defendant GARDNER made materially false statements and misrepresentations in, and provided materially false documentation with, his loan applications and in settling on the 2004 HELOC loans and the 2006 HELOC loans. Among the materially false statements, misrepresentations, and false documentation, defendant GARDNER provided a false social security number and falsely

8

represented himself as a United States citizen. Defendant GARDNER also falsely represented his assets and liabilities at the times that he applied for and settled the 2004 HELOC loans and the 2006 HELOC loans. With respect to the 2006 HELOC loans, defendant GARDNER falsely represented that he would be occupying the Dexter Terrace Property as his primary residence.

25.     It was a further part of the scheme to defraud that defendant GARDNER made materially false statements and misrepresentations in loan documents that defendant GARDNER executed at settlement, including affidavits and other documents certifying to the accuracy and completeness of the information provided in applying for the loans, and that no other liens had been placed on either the 13th Street Property or the Dexter Terrace Property, respectively. Defendant GARDNER also executed affidavits at settlement for certain of the 2006 HELOC loans certifying that defendant GARDNER would occupy the Dexter Terrace Property as his primary residence, when in truth and in fact, he did not.

26.     It was a further part of the scheme to defraud that, on or about April 8 and 9, 2006, defendant GARDNER faxed a false utility bill purporting to show the electricity usage at the Dexter Terrace Property to SunTrust Bank and Citibank, respectively, when defendant GARDNER knew that in truth and in fact, the utility bills actually reflected the electricity usage for the 13th Street Property.

27.     It was a further part of the scheme to defraud that, on or about May 10, 2006, defendant GARDNER submitted a credit application to Cort Furniture Rental relating to several items of furniture that defendant GARDNER rented and arranged for delivery to the Dexter Terrace Property on or about May 15, 2006. Defendant GARDNER rented the furniture for a four-day period, until on or about May 19, 2006, so that, among other reasons, the rented furniture would be present in the Dexter Terrace Property at the time of an interior appraisal on

or about May 16, 2006, to give the false appearance that defendant GARDNER used the Dexter Terrace Property as his primary residence, when in truth and in fact, he did not.

28.  It was a further part of the scheme to defraud that, between on or about September 23, 2004, and on or about June 9, 2008, defendant GARDNER made advances and draws on the 2004 HELOC loans and the 2006 HELOC loans.

29.  It was a further part of the scheme to defraud that, between on or about November 2, 2004, and on or about March 2, 2005, defendant GARDNER used proceeds of the 2004 HELOC loans to purchase properties in Baltimore, Maryland (the "Baltimore Properties") outright and with no additional financing.

30.  It was a further part of the scheme to defraud that defendant GARDNER used his ownership of the Baltimore Properties to conceal the extent of his liabilities on the 13th Street Property, as a result of advances and draws he had made on the 2004 HELOC loans.  In applications for certain of the 2006 HELOC loans, defendant GARDNER falsely attributed certain outstanding loan obligations on the 13th Street Property to certain of the Baltimore Properties.  In some instances, defendant GARDNER falsely attributed outstanding liabilities to Baltimore Properties that defendant GARDNER previously sold and no longer owned.

31.  It was a further part of the scheme to defraud that, between on or about December 17, 2007, and on or about December 4, 2009, defendant GARDNER used funds derived from the 2004 HELOC loans and the 2006 HELOC loans to purchase precious metals and other items through Goldline International, Inc., GoldSilver, Inc. (also known as GoldSilver.com), and California Numismatic Investments (also known as GoldDealer.com).  These purchases included gold bullion, gold coins, silver bars, silver coins, and collectible treasury notes, among other items.

32. It was a further part of the scheme to defraud that defendant GARDNER failed to repay the principal amounts outstanding on the 2004 HELOC loans secured by the 13th Street Property totaling $1,400,708.

33. It was a further part of the scheme to defraud that defendant GARDNER failed to repay the mortgage loan obtained through Chase Manhattan Mortgage Corporation, which maintained the first lien position on the 13th Street Property, with the amount of unpaid principal totaling $342,951.

34. It was a further part of the scheme to defraud that defendant GARDNER failed to repay the principal amounts outstanding on the 2006 HELOC loans secured by the Dexter Terrace Property totaling $1,920,586.

35. On or about the dates listed for each count below, in the District of Columbia and elsewhere, for the purpose of executing the aforementioned scheme and artifice and attempting to do so, the defendant, GARTH GARDNER, also known as G.A. GARDNER, did knowingly commit, and willfully caused the commission of, the following acts, each of which constituted an execution of the fraudulent scheme:

| Count | On or About Date | Act |
|---|---|---|
| 1. | 9/18/04 | Defendant GARDNER signed a deed of trust and borrower affidavit on the 13th Street Property to Provident Bank of Maryland, a federally insured financial institution now known as M&T Bank and Manufacturers and Traders Trust Company, to secure a HELOC loan in the amount of $104,000. |
| 2. | 9/23/04 | Defendant GARDNER signed a deed of trust on the 13th Street Property to SunTrust Bank, a federally insured financial institution, to secure a HELOC loan in the amount of $90,000. |

| 3. | 9/28/04 | Defendant GARDNER signed a deed of trust on the 13th Street Property to Riggs Bank, N.A., a federally insured financial institution now known as PNC Bank, N.A., to secure a HELOC loan in the amount of $173,000. |
| --- | --- | --- |
| 4. | 10/14/04 | Defendant GARDNER signed a borrower lien affidavit on the 13th Street Property to ING Bank, F.S.B., a federally insured financial institution now known as Capital One Bank, N.A., to secure a HELOC loan in the amount of $57,700. |
| 5. | 5/12/06 | Defendant GARDNER signed a deed of trust on the Dexter Terrace Property to Countrywide Bank, N.A., a federally insured financial institution now known as Bank of America, N.A., to secure a HELOC loan in the amount of $180,000. |
| 6. | 5/12/06 | Defendant GARDNER signed a deed of trust and borrower's limited title agreement on the Dexter Terrace Property to First Horizon Home Loan Corporation, a wholly owned subsidiary of First Tennessee Bank, N.A., a federally insured financial institution, to obtain proceeds from First Tennessee Bank, N.A. and secure a HELOC loan in the amount of $125,000. |
| 7. | 5/12/06 | Defendant GARDNER signed a deed of trust on the Dexter Terrace Property to National City Bank, a federally insured financial institution now known as PNC Bank, N.A., to secure a HELOC loan in the amount of $168,240. |
| 8. | 5/15/06 | Defendant GARDNER signed a deed of trust and property affidavit and agreement on the Dexter Terrace Property to Washington Mutual Bank, F.A., a federally insured financial institution now known as JP Morgan Chase Bank, N.A., to secure a HELOC loan in the amount of $192,000. |
| 9. | 5/15/06 | Defendant GARDNER signed a deed of trust and grantor limited title agreement on the Dexter Terrace Property to SunTrust Bank, a federally insured financial institution, to secure a HELOC loan in the amount of $160,000. |

| 10. | 5/15/06 | Defendant GARDNER signed a deed of trust and owner's affidavit on the Dexter Terrace Property to Charles Schwab Bank, N.A., a federally insured financial institution, to secure a HELOC loan in the amount of $100,000. |
|---|---|---|
| 11. | 6/7/06 | Defendant GARDNER signed a deed of trust, borrower's affidavit as to other liens, and affidavit of occupancy on the Dexter Terrace Property to Flagstar Bank, F.S.B., a federally insured financial institution, to secure a HELOC loan in the amount of $166,400. |

**(Bank Fraud, in violation of Title 18, United States Code, Section 1344)**

## COUNTS TWELVE THROUGH SIXTEEN
### (False Statements on Loan Application)

36. Paragraphs 1 through 34 of this Indictment are realleged and are incorporated by reference as if set out in full.

37. On or about the dates listed for each count below, in the District of Columbia and elsewhere, the defendant, GARTH GARDNER, also known as G.A. GARDNER, unlawfully and knowingly made material false statements and provided material false documentation to the financial institutions, the deposits of which were insured by the Federal Deposit Insurance Corporation, listed for each count below, in connection with loan applications for the purpose of obtaining the 2004 HELOC loans on the 13th Street Property and the 2006 HELOC loans on the Dexter Terrace Property, in that defendant GARDNER provided false applications, and fictitious support therefor, for the purpose of influencing the actions of the financial institutions listed for each count below:

| Count | On or-About Date | Financial Institution | Act |
|---|---|---|---|
| 12. | 9/28/04 | Riggs Bank, N.A. (now known as PNC Bank, N.A.) | Defendant GARDNER signed a loan application for a HELOC loan to be secured by the 13th Street Property containing false statements. |
| 13. | 5/12/06 | First Horizon Home Loan Corporation (a wholly owned subsidiary of First Tennessee Bank, N.A.) | Defendant GARDNER signed a loan application for a HELOC loan to be secured by the Dexter Terrace Property containing false statements. |
| 14. | 5/12/06 | National City Bank (now known as PNC Bank, N.A.) | Defendant GARDNER signed a loan application for a HELOC loan to be secured by the Dexter Terrace Property containing false statements. |
| 15. | 5/15/06 | Charles Schwab Bank, N.A. | Defendant GARDNER signed a loan application for a HELOC loan to be secured by the Dexter Terrace Property containing false statements. |
| 16. | 6/7/06 | Flagstar Bank, F.S.B. | Defendant GARDNER signed a loan application for a HELOC loan to be secured by the Dexter Terrace Property containing false statements. |

**(False Statements on Loan Application, in violation of Title 18, United States Code, Section 1014)**

## COUNT SEVENTEEN
### (Monetary Transactions in Property Derived from Specified Unlawful Activity)

38. Paragraphs 1 through 34 of this Indictment are realleged and are incorporated by reference as if set out in full.

39. On or about December 4, 2009, in the District of Columbia and elsewhere, the defendant, GARTH GARDNER, also known as G.A. GARDNER, did knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is the exchange and transfer of $29,925 in U.S. currency that defendant GARDNER deposited into an account with GoldSilver, Inc. (also known as GoldSilver.com) on or about October 29, 2008, for the purchase of 15 silver bars, such property having been derived from a specified unlawful activity, that is, bank fraud, in violation of 18 United States Code, Section 1344.

**(Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of Title 18, United States Code, Section 1957)**

## FORFEITURE ALLEGATION

1. Upon conviction of the offenses alleged in Count One through Count Sixteen, the defendant shall forfeit to the United States any property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of these offenses, pursuant to Title 18, United States Code, Section 982(a)(2)(A). The property subject to forfeiture includes:

> Any and all precious metal coins and bars purchased by defendant Garth Gardner, beginning on or about May 5, 2008, until the present from GoldSilver, Inc., 429 Santa Monica Blvd., Suite 325, Santa Monica, California, 90401, and held and placed in storage by GoldSilver, Inc.

2. Upon conviction of the offense alleged in Count Seventeen, the defendant shall forfeit to the United States any property, real or personal, involved in this offense, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

3. The United States will also seek a forfeiture money judgment in an amount of at least two million dollars ($2,000,000), against the defendant that is equal to the value of any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of Count One through Count Sixteen. The United States will also seek a forfeiture money judgment in an amount of at least $29,925, against the defendant that is equal to the value of any property, real or personal, involved in the commission of Count Seventeen.

4. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Sections 982(a)(1) and (a)(2)(A), and Title 21, United States Code, Section 853(p))**

A TRUE BILL:

FOREPERSON

ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA